IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello

Criminal Action No. 17-cr-00065-CMA-GPG

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ROBERT LAFOND,

    Defendant.

_____

**ORDER GRANTING DEFENDANT'S MOTION FOR SENTENCE REDUCTION
PURSUANT TO 18 U.S.C. § 3582(c)**
_____

    This matter is before the Court on Defendant Robert LaFond's Supplement to his Motion for Reduction of Sentence pursuant to 18 U.S.C. § 3582(c) ("Supplement") (Doc. # 89). For the following reasons, the Court concludes that modifying Mr. LaFond's sentence from 210 months to 168 months is appropriate and justified by extraordinary and compelling circumstances. The Court therefore grants his Motion.

### I.    BACKGROUND

    On April 4, 2019, Mr. LaFond pleaded guilty to one count of possession with the intent to distribute 500 grams and more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii) and one count of conspiracy in violation of 18 U.S.C. § 371. (Doc. # 60 at 1.) United States District Judge Marcia S. Krieger sentenced Mr. LaFond to 210 months imprisonment in the Federal Bureau of Prisons ("BOP") followed by 5

years of supervised release. (Doc. # 78 at 2–3.) Prior to sentencing, the United States Probation Office and defense counsel recommended a sentence of 168 months, the lowest end of the Guideline range of 168 to 210 months. (Doc. # 76 at 2; Doc. # 66-1 at 2.) As of the date of his motion, Mr. LaFond has served approximately 70 months, or 34% of his sentence. (Doc. # 85 at 4.) His projected release date is February 4, 2032.

On November 28, 2022, Mr. LaFond submitted a six-page, handwritten *pro se* Motion for a Sentence Reduction – Compassionate Release. (Doc. # 80.) The Government filed a Response opposing Mr. LaFond's motion. (Doc. # 85.) On January 20, 2023, this Court issued an Order Denying Mr. LaFond's Motion for a Sentence Reduction. (Doc. # 86.) The Court found that Mr. LaFond had not demonstrated extraordinary and compelling circumstances justifying release and that early release was not appropriate considering the 18 U.S.C. § 3553(a) factors. (*Id.*)

On January 27, 2023, defense counsel on behalf of Mr. LaFond filed an unopposed request for leave to supplement Mr. LaFond's Motion for a Sentence Reduction. (Doc. # 87.) The Court granted that request (Doc. # 89), and Mr. LaFond's counsel timely filed the instant Supplement asking the Court to reconsider its denial of Mr. LaFond's Motion for a Sentence Reduction (Doc. # 89). Now, having carefully reviewed the Supplement and the record in this case, the Court finds that Mr. LaFond has established extraordinary and compelling circumstances justifying reducing his sentence to 168 months, the lowest end of the Guideline range.

## II.  APPLICABLE LAW

The Court may reduce a defendant's term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) if the Court finds that (1) extraordinary and compelling reasons warrant such a reduction; (2) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission;[1] and (3) such reduction is warranted under the circumstances of the case after considering the applicable § 3553(a) factors. *United States v. Maumau*, 993 F.3d 821, 831 (10th Cir. 2021) (citing 18 U.S.C. § 3582(c)(1)(A)(i)). As the movant, Mr. LaFond bears the burden of establishing that he is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has identified several circumstances—such as advanced age, severe physical deterioration, terminal illness, or the death of a caregiver of the defendant's minor children—that may qualify as "extraordinary or compelling reasons" that justify a sentence reduction. USSG § 1B1.13, cmt. n.1(A)–(C). Although the Court is not constrained by the Sentencing Commission's guidance at step one of the 18 U.S.C. § 3582(c)(1)(A) inquiry, the Court concludes that the application notes to USSG § 1B1.13 "still provide[] the best definition and description of 'extraordinary and compelling reasons.'" *United States v. Carr*, 851 F. App'x 848, 853 (10th Cir. 2021)

---

[1] Because the United States Sentencing Commission has not promulgated a post-First Step Act policy statement, there currently are no "applicable policy statements" with respect to a motion for sentence reduction brought by a defendant, as opposed to a motion brought by the Bureau of Prisons. *See United States v. Dean*, No. 21-2082, 2022 WL 484241, at *1 (10th Cir. 2022) (unpublished) ("[U]ntil the Sentencing Commission promulgates new policy statements, a district court may consider only the first and third prerequisites for compassionate release under § 3582(c)(1)A) because currently there are no applicable policy statements under the second prerequisite.").

(unpublished); see United States v. McGee, 992 F.3d 1035, 1045 (10th Cir. 2021) (finding that the Sentencing Commission's examples of "extraordinary and compelling reasons" are descriptions and not limiting definitions).

### III.   DISCUSSION

Mr. LaFond asserts that his medical conditions constitute extraordinary and compelling circumstances justifying a reduction of sentence. (Doc. # 89 at 3–4.) He argues that his health has significantly deteriorated since his incarceration, resulting in two open heart surgeries and placing him at a much greater risk of death or serious illness from COVID-19. Given his serious medical conditions, Mr. LaFond requests a reduction of his sentence to the low end of the Guideline range of 168 months. The Court finds that a reduction in sentence to 168 months is appropriate for the following reasons:

- Mr. LaFond's current serious health problems have mostly developed and/or worsened since sentencing. Prior to sentencing, in 2016, Mr. LaFond had suffered a transient ischemic attack (stroke). (Doc. # 89 at 4.)  In a sentencing memorandum, defense counsel briefly raised the issue of Mr. LaFond's health, including his history of stroke, hypertension, seizure disorder, and cervical spinal disease. (Doc. # 76.) Defense counsel also attached two pages of medical records. (Doc. # 76-1.) However, the Presentence Investigation Report ("PSI") mentioned only that Mr. LaFond reported having high blood pressure. (Doc. # 66 at ¶ 60.)

4

- Since commencing his sentence, Mr. LaFond's medical conditions have significantly worsened. In July 2020, Mr. LaFond underwent a thoracic aorta repair surgery on his heart, and in April 2022, he had a hemi arch replacement surgery. (Doc. # 89 at 4.) In addition to his two open heart surgeries, Mr. LaFond states that he suffers from uncontrollable high blood pressure and has shortness of breath for basic tasks, like walking down the hall. (*Id.* at 8.) According to medical records, his listed diagnoses include:
  - Complex partial seizure (CMS-HCC)
  - Grand mal seizure disorder (CMS-HCC)
  - History of repair of Stanford type A dissecting aneurysm of thoracic aorta;
  - HTN (hypertension)
  - Seizures (CMS-HCC)
  - Spinal stenosis in cervical region
  - TIA (transient ischemic attack).

(Doc. # 89-1 at 1.)

- Mr. LaFond's medical records demonstrate that he regularly complains of shortness of breath, chest discomfort, and not receiving his necessary medications. For example, a March 29, 2022 record indicates that Mr. LaFond reported to the pill line window to get his scheduled medications and told nursing staff that he had increased shortness of breath on exertion accompanied with chest and back discomfort. (Doc. # 89-1 at 3.) Nursing staff observed that his face was "gray in color" and that he had "audible wheezing."

5

(*Id.*) They also noted that he "has an extensive cardiac history . . . and has been seen for increased SOB and chest discomfort twice over the last month." (*Id.*) Nursing staff took him to urgent care, where a doctor stated that Mr. LaFond was "'fine' and dismisse[d] nursing staff's concerns." (*Id.*) When nursing staff informed the doctor that Mr. LaFond was symptomatic at the pill window, the doctor responded, "aren't they all when they want something?" (*Id.*) Mr. LaFond was then sent home without an evaluation. Mr. LaFond states that this dismissiveness of his treatment is "the norm that more often goes undocumented." (Doc. # 89 at 6.)

- Mr. LaFond also argues that he is at a higher risk of suffering serious consequences, including death, from contracting COVID-19. The CDC states that those with "heart conditions such as heart failure, coronary artery disease, cardiomyopathies, and possibly high blood pressure (hypertension)" have an increased risk of getting "very sick from COVID-19" and are therefore more likely to be hospitalized, need intensive care, require a ventilator, and potentially die. *See People with Certain Medical Conditions*, CDC, https://cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Feb. 10, 2023). The CDC also states that "having a stroke" which "affects blood flow to the brain can make you more likely to get very sick from COVID-19." *Id.* Accordingly, the Court agrees with Mr. LaFond that his medical conditions place him at a higher risk of suffering significant illness or death in the event he contracts COVID-19.

6

- Mr. LaFond has been vaccinated for COVID-19; however, his most recent vaccination was October 7, 2021. (Doc. # 85 at 4.) This Court has previously found that an inmate's vaccination against COVID-19 weighs against a finding of extraordinary and compelling circumstances. *See United States v. Hald*, 8 F.4th 932, 936 n.2 (10th Cir. 2021) (citing *United States v. Baeza-Vargas*, 532 F. Supp. 3d 840, 843–46 (D. Ariz. Apr. 5, 2021) for its illustration of a "'growing consensus' that either receiving or refusing COVID-19 vaccination 'weighs against a finding of extraordinary and compelling circumstances'"). The CDC currently provides that an individual is "up to date" on the vaccine if they "have completed a COVID-19 vaccine primary series and received the most recent booster dose" recommended for them by the CDC. *See Frequently Asked Questions About COVID-19 Vaccination*, CDC, https://cdc.gov/coronavirus/2019-ncov/vaccines/faq.html (last updated Apr. 19, 2023). Updated boosters, which "are called 'updated' because they protect against both the original virus that causes COVID-19 and the Omicron variant BA.4 and BA.5," became available on September 2, 2022, for people aged 12 years and older. *See Stay Up to Date with COVID-19 Vaccines Including Boosters*, CDC, https://cdc.gov/coronavirus/2019-ncov/vaccines/stay-up-to-date.html (last updated Apr. 13, 2023). It therefore appears that Mr. LaFond has not received an updated booster vaccine dose against COVID-19. While his vaccination status is still significant, the Court accords it less weight

- because of the time that has passed since his most recent dose and the fact that Mr. LaFond has not received an updated booster.

- The Government concedes that Mr. LaFond "no doubt has several health issues." (Doc. # 85 at 4.) However, the Government argues that Mr. LaFond's health conditions are not so severe as to amount to extraordinary and compelling reasons justifying release and, in any event, Mr. LaFond has been receiving "excellent, diligent and high quality care at FCI Butner II." (*Id.*) According to the Government, Mr. LaFond "either submits a sick call note or is seen in a medical encounter on essentially an every week basis" and he "has been prescribed multiple different medications for his high blood pressure, including warfarin, chlorthalidone, norvasc, losartan, toprol, amplodipine, metoprolol spironolactone and amiodarone." (*Id.* at 5.) Mr. LaFond does not dispute that he often has medical encounters, but he argues that his medical concerns are often dismissed or not addressed during these encounters. (Doc. # 89-1 at 2.) Mr. LaFond also disputes that being prescribed medications means that he is actually receiving those medications, and he submits records demonstrating at least five examples of instances where BOP failed to provide him with his necessary blood pressure medications. (*Id.* at 4–8.)

- Considering the totality of the circumstances, the Court finds that Mr. LaFond's significant, worsening medical conditions constitute extraordinary and compelling reasons justifying a reduction of sentence. The Court is particularly mindful of Mr. LaFond's two open heart surgeries, his ongoing issues with high

- blood pressure, his shortness of breath, and his other serious non-heart-related diagnoses.

- The Court has also fully considered the 18 U.S.C. § 3553(a) factors and incorporates its previous discussion of those factors from its January 20, 2023 Order. (Doc. # 86 at 7–8.) The Court maintains that terminating Mr. LaFond's sentence and permitting Mr. LaFond to serve only one third of his sentence is not appropriate. However, the Court agrees with Mr. LaFond that a reduction to 168 months, the lowest end of the Guideline range in this case, will still reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate general and specific deterrence to criminal conduct. *See* 18 U.S.C. § 3553(a). Given Mr. LaFond's serious medical conditions, the Court finds that his requested sentence reduction within the Guideline range is justified under the totality of the circumstances.

## IV.   CONCLUSION

For the foregoing reasons, Mr. LaFond's Supplemental Motion for Reduction of Sentence (Doc. # 89) is GRANTED. Mr. LaFond's sentence is reduced from 210 months to 168 months incarceration. No other change is made to the sentence imposed.

Dated: May 1, 2023

BY THE COURT:

CHRISTINE M. ARGUELLO
Senior United States District Judge